1

2

3

4

5

6

7

8            **UNITED STATES DISTRICT COURT**

9          **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  RISKI PRODUCTIONS, INC., a              CASE NO. 07cv1383-LAB (CAB)
    California corporation,

12                                          **ORDER DENYING DEFENDANTS'**
                                 Plaintiff, **MOTION TO DISMISS OR STAY**

13        vs.

14
    KAREN CARRADO, an individual, and
15  KAREN CARRADO as TRUSTEE on
    behalf of the K. Carrado Trust,

16
                               Defendants.

17

18        On July 27, 2007, Plaintiff Riski Productions, Inc. ("Riski") filed its complaint in this

19  case raising state-law claims against Defendant Karen Carrado ("Carrado"). The Amended

20  Complaint invokes this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Carrado

21  filed a motion to dismiss or stay this action (the "Motion"), pointing out an apparently related

22  action, *Carrado v. Riski Prods.*, case no. 037-2007-00070981-CU-MC-CTL, is pending in

23  California state superior court. Riski is a California corporation with its principal place of

24  business in this District. Karen Carrado is a New Jersey resident and trustee of Defendant

25  K. Carrado Trust.

26  **I.      Background**

27        The claims in this action arise from an agreement to sell a nightclub to Riski. The

28  Amended Complaint alleges Defendant Carrado signed the purchase agreement in her

                                    - 1 -                                      07cv1383

1  capacity as President of TAG Enterprises ("TAG"), a corporation.  It also alleges alterations

2  had been made to the building without the required permits and that neither Defendant

3  Carrado nor TAG disclosed this.  It further alleges Riski could not afford to correct the

4  defects, which interfered with the nightclub's profitability, and Riski was forced to sell the

5  nightclub at a loss.  Riski seeks $200,000 in damages and rescission of the purchase

6  agreement.

7       In support of their Motion, Carrado attaches the Second Amended Complaint for

8  Declaratory Relief filed in state court on October 3, 2007 (Amin Decl., Ex. F ("State Court

9  Complaint").)  Carrado points out the state court case has been pending since July 12, 2007

10  (Defs.' Mem. at 5:2–6). Riski does not contest Carrado's contention that the amended State

11  Court Complaint relates back to the complaint originally filed.  Neither party has sought to

12  file any supplemental briefing showing developments of any importance in the state court

13  proceeding.

14       Carrado contends the claims raised in this action should in fact have been raised as

15  a compulsory counterclaim in the state court action, and the state court action will resolve

16  all issues raised in the federal action.  Carrado also argues the doctrine of *Colorado River*

17  *Water Conservation Dist. v. United States*, 424 U.S. 800, 817–18 (1976) should be applied.

18  Carrado cites *Ritza v. Int'l Longshoremen's and Warehousemen's Union*, 837 F.2d 365, 369

19  (9th Cir. 1988) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1360 at

20  633–34 (1969)) for the principle that the Court may entertain other pre-answer motions, such

21  as motions to dismiss because another action is pending, even though such a motion is not

22  expressly provided for under the Federal Rules of Civil Procedure.  She has not identified

23  any jurisdictional defects in this action nor are any apparent in the pleadings.

24  **II.**    **Discussion**

25       Generally, the pendency of an action in state court is no bar to proceedings

26  concerning the same matter in federal court.  *Colorado River*, 424 U.S. at 813.  Ordinarily,

27  federal courts have "virtually unflagging obligation . . .  to exercise the jurisdiction given

28  them," so a stay or dismissal is appropriate only in exceptional circumstances.  *Id.* at 817.

1  When those exceptional circumstances exist, however, a stay or even dismissal may be

2  appropriate. *Id.* at 818–21. The Court is mindful that the circumstances justifying application

3  of the *Colorado River* doctrine are "exceedingly rare." *Smith v. Cent. Ariz. Water Conserv.*

4  *Dist.*, 418 F.3d 1028, 1033 (9th Cir. 2005).

5       Although several factors weigh for or against application of the *Colorado River*

6  doctrine, *Nakash v. Marciano*, 882 F.2d 1411, 1415–17 (9th Cir. 1989) (setting forth factors),

7  the Court must first determine whether the state and federal actions are parallel. *Enfission,*

8  *Inc. v. Leaver*, 408 F. Supp. 2d 1093, 1096 (W.D.Wash., 2005) (citing *Moses H. Cone Mem'l*

9  *Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 28 (1983)). The two proceedings need not be

10  exactly parallel; it is enough if the two are "substantially similar." *Nakash* at 1415 *(*citations

11  omitted).

12       Carrado argues California law requires Riski to raise its claims by cross-complaint and

13  failure to do so would bar it from doing so in any other action. Cal. Code Civ. Proc. §

14  426.30(a). *See also* § 426.10(c) (defining "related cause of action"). If this were the case,

15  adjudication of the claims in state court would necessarily resolve the claims in this Court,

16  and the Court's inquiry into whether the cases were "substantially similar" would be an easy

17  one. *See Casablanca Resorts, LLC v. Backus*, 2007 WL 951946, slip op. at *1 (D.Nev.,

18  March 28, 2007) (applying *Nakash* and finding that claims arising from the transaction or

19  occurrence that formed the subject matter of the claim in state court, which constituted

20  compulsory counterclaims under state law, were "substantially similar" to those asserted in

21  the pending federal action). Because the State Court Complaint seeks only declaratory relief

22  against Riski, however, under Cal. Code Civ. Proc § 426.60(c) Riski's claims, though related,

23  need not have been raised in a cross-claim. *Russo v. Scrambler Motorcycles*, 56 Cal.App.3d

24  112, 117, 127 Cal.Rptr. 913 (1976).

25       While the theories of recovery are not the same, a review of the Amended Complaint

26  and the State Court Complaint reveals some overlap in the factual and legal issues

27  presented. Here, Riski alleges Defendant Carrado fraudulently induced it to purchase the

28  / / /

1 | nightclub, failing to inform it of permitting problems and thus deceiving it regarding the value

2 | of the nightclub.  Here, too, Riski seeks rescission of the purchase agreement.

3 | In the state court action, Carrado charges Riski Productions with failing to make timely

4 | payments.  (State Court Complaint, ¶ 9.)  Carrado seeks declaratory relief preventing Riski

5 | Productions from prosecuting claims against her and finding her not liable for the permitting

6 | problems which are the subject of the litigation in this Court.  (*Id.*, ¶ 10 and 6:22–7:16.)

7 | Carrado also argues she was not a party to the Purchase Agreement and seeks a

8 | declaration so stating.  (*Id.*, ¶ 18 and 6:23–26.)  In addition, the parties are attempting to

9 | litigate their respective rights and duties under the purchase agreement. (*Id.*, ¶ 24.)  In other

10 | words, confirmation of the purchase agreement's enforceability is a central object of that

11 | litigation.

12 | The parties are identical, and the permitting issue is closely related to that in the State

13 | Court Complaint.  The State Court Complaint alleges the parties agreed that Riski would sell

14 | the nightclub to a third party and for that third party to make payments to the K. Carrado

15 | Trust. (State Court Complaint, ¶ 9.)  Furthermore, in this case Riski seeks rescission of the

16 | purchase agreement which effectively litigates the purchase agreement's enforceability.

17 | The State Court Complaint asks for a declaration that Defendant Carrado is not liable

18 | for acts stated in the arbitration demand. (State Court Complaint at 7:1–14.)  The arbitration

19 | demand, attached as an exhibit to the Motion describes the nature of the claims to be

20 | arbitrated as follows:

21 | 
22 | 
23 | 
> The dispute involves a failure to disclose material facts related to the purchase and sale of a business, including an interest in real property. Claimant, Buyer, purchased a bar business that included an out-door patio bar from Respondent, Seller.  Claimant allege[ ]s that Seller did not disclose the fact that the patio bar was not permitted prior to purchase.   Since purchase, Claimant has suffered significant damages as a result.

24 | 

25 | (Decl. of Karen Carrado in Supp. of Motion, Ex. C (Arbitration Demand).)  The respondents

26 | are identified as Karen Carrado in her individual capacity and on behalf of TAG. (*Id.*)  Thus,

27 | the state court action seeks a declaration that Carrado is not liable for failing to disclose the

28 | permitting problems, which is the issue here.  Thus far, the cases are similar.

07cv1383

1    The standard for issuance of a stay under *Colorado River* is, however, exceptionally

2    high, even if the Court is merely staying rather than dismissing the action. *Moses H. Cone*,

3    460 U.S. at 27–28.  A stay should be granted only if the Court "concludes that the parallel

4    state-court litigation will be an adequate vehicle for the complete and prompt resolution of

5    the issues between the parties."  *Id.* at 28.  "[T]he decision to invoke *Colorado River*

6    necessarily contemplates that the federal court will have nothing further to do in resolving

7    any substantive part of the case, whether it stays or dismisses." *Id.* (citation omitted).  The

8    Court must have "full confidence" the state court action will end the litigation; "the existence

9    of a substantial doubt as to whether the state proceedings will resolve the federal action

10   precludes the granting of a stay." *Intel Corp. v. Advanced Micro Devices, Inc.*, 12 F.3d 908,

11   913 (9th Cir.1993) (citing *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271,

12   277 (1988)).

13   Riski argues the state action would not resolve all issues in the federal action (Opp'n

14   to Motion, at 5:8–13, 7:3–8:16), which may be true.  Without actually examining and

15   resolving the claims at issue here, it is impossible to say whether the state court will grant

16   or deny Carrado's request for declaratory relief.  The state court may grant her request for

17   a declaration that she cannot be liable for failing to disclose the permitting problems.  It may

18   well deny her request, however, without necessarily finding her liable.

19   The state court could, for instance, agree with Carrado that she was not a party to

20   either the purchase agreement and partial payment agreement (State Court Complaint, ¶ 18)

21   and on that basis conclude she, in her individual capacity, was not party to any "actual

22   controversy" with Riski regarding her rights and duties under the two agreements.  (*Id.*,

23   ¶¶ 24–26.)  *See* Cal. Code Civ. Proc. § 1060 (authorizing actions for declaratory relief in

24   cases of "actual controversy" between parties based on written agreements).  "The 'actual

25   controversy' requirement concerns the existence of present controversy relating to the legal

26   rights and duties of the respective parties pursuant to contract, statute or order." *Brownfield*

27   *v. Daniel Freeman Marina Hosp.* 208 Cal.App.3d 405, 410, 256 Cal.Rptr. 240 (1989)

28   (citations omitted).  Or, the state court could find the controversy between Carrado and Riski

07cv1383

1   is merely anticipated in the future and not a present, live controversy.  *Id.*  It may also deny

2   relief if it finds she lacks evidence to show she is <u>not</u> liable without passing on the question

3   of whether Riski has adequate evidence to show she <u>is</u> liable.  In other words, a denial of

4   declaratory relief would not necessarily resolve the federal case.

5      In *Intel*, the Ninth Circuit confronted a similar situation.  There, concurrent state court

6   proceedings would have resolved all the issues only if the state court confirmed an

7   arbitration award and if the state court's decision had collateral estoppel effect in federal

8   court.  12 F.3d at 913.  If, however, the state court had overturned the arbitration award,

9   further proceedings would be necessary in federal court.  *Id.*  The court therefore found

10  "substantial doubt" precluded a *Colorado River* stay.  *Id.*  If, as is the case here, the state

11  court's decision may — but need not — resolve the federal action, a *Colorado River* stay is

12  inappropriate.  *City and County of San Francisco v. United States*, 930 F. Supp. 1348, 1352

13  n.2 (N.D.Cal. 1996) ("[I]f the state court action will moot the federal action only if one of many

14  possible resolutions are reached by the state court, a federal court may not stay the case

15  before it.") (citing *Intel*).

16     While Carrado persuasively argues that conducting related state and federal litigation

17  simultaneously is not the best or most efficient use of judicial resources, and maintenance

18  of concurrent actions could result in conflicting results, these problems alone are an

19  inadequate basis on which to grant a stay under *Colorado River*.

20     In *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1151 n.13, 1154 (9th Cir.

21  2007), the Circuit reversed a district court's abstention where issues in federal and state

22  courts were not coextensive, but any federal court decision <u>might</u> have conflicted with state

23  court proceedings.  Judge Ferguson's concurrence also analyzed the dismissal under

24  *Colorado River*.  *Id.* at 1154–56. Though he opined that, "where a nearly identical case is

25  already pending in state court and there is clearly no federal question before the federal

26  court, the latter forum should be permitted to stay its proceeding pending the outcome of the

27  state suit," he nevertheless agreed that application of the *Colorado River* doctrine would

28  have been impermissible.  The Supreme Court's holding in *Gulfstream* points out a federal

1  court will often appropriately deny a stay or dismissal under *Colorado River* until the propriety

2  of a stay or dismissal becomes clearer.  485 U.S. at 277–78 (explaining that denial of motion

3  for stay or dismissal under *Colorado River* was "inherently tentative" because a district court

4  may conclude it "should await further developments" such as the state case's expansion or

5  its movement at a faster pace).

6          The Court therefore concludes a stay is unavailable.  However, "given both the nature

7  of the factors to be considered under Colorado River and the natural tendency of courts to

8  attempt to eliminate matters that need not be decided from their dockets, a district court

9  usually will expect to revisit and reassess an order denying a stay in light of events occurring

10  in the normal course of litigation." *Gulfstream*, 485 U.S. at 278.  If, in light of developments

11  in state court, either of the parties believe application of the *Colorado River* doctrine

12  becomes appropriate during the pendency of the action here, they may then move again for

13  a stay or dismissal.

14  **III.**    **Conclusion and Order**

15          For these reasons, the Motion is **DENIED WITHOUT PREJUDICE**.

16

17          **IT IS SO ORDERED**.

18  DATED:  September 29, 2008

19

20  **HONORABLE LARRY ALAN BURNS**
United States District Judge

21

22

23

24

25

26

27

28

         07cv1383